UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JEROME BURGESS
a.k.a. Sham'la God Allah,

        Plaintiff,

v.                                      Case No. 3:22-cv-416-BJD-PDB

CHRISTOPHER HODGSON, et al.,

        Defendants.
_____

**<u>ORDER</u>**

**I.  Status**

Plaintiff, an inmate in the Florida Department of Corrections (FDOC) who is proceeding as a pauper, initiated this case by filing a pro se Civil Rights Complaint (Doc. 1) against Warden Christopher Hodgson, Dr. Alexis Figueroa, Nurse Dunaway, Correctional Officer Young, and Dr. Cruz.[1] Before the Court are Motions to Dismiss filed by Defendants Cruz (Doc. 78) and Dunaway (Doc. 79). Plaintiff has responded to both Motions (Docs. 88, 89).

---

[1] Plaintiff also named Nurse Andrews, but the Court dismissed all claims against Andrews. *See* Order (Doc. 90).

## II.   Plaintiff's Allegations[2]

In the Complaint, Plaintiff contends that while at Suwannee Correctional Institution, he was diagnosed with high blood pressure, thyroid complications, and urinary retention left side paralysis. Doc. 1 at 13. Plaintiff is also dependent on a wheelchair. *Id.* Medical staff prescribed Plaintiff multiple medications and "coude catheters" for his urinary retention to be used four times per day. *Id.* From March 2018 to August 2019, Plaintiff filed multiple grievances about being denied catheters. *Id.* In response, the Warden, Cruz, and Figueroa would assure Plaintiff that he would receive the proper catheters. *Id.*

During the entire month of October 2018, Plaintiff was denied the use of coude catheters, which caused him to have 5 seizures. *Id.* at 14. He suffered "a great deal of pain, lost his memory, knocked out his left rear tooth, cracked his left ribs, reinjured his left foot (in which he has foot drop) and reinjured his left index finger." *Id.* This occurred while Plaintiff continued to ask Cruz and Figueroa why he was not receiving his catheters, to which they responded that "'they either forgot to order them or would order them.'" *Id.*

---

[2] The Court's summary focuses on the allegations as to Defendants Cruz and Dunaway.

On April 15, 2019, Defendant Dunaway and another unnamed nurse called Plaintiff "a p*ssy mother f*cker' and mushing him in the face, threaten[ed] to have their officer buddies commit bodily harm upon the Plaintiff if his lawyer continue[d] to e-mail/write letters to Defendants Hodgson, Figueroa and Cruz." *Id.* at 15. Dunaway told Plaintiff that "the reason she makes sure that the Plaintiff doesn't receive his coude catheters is because she hates inmates that sue the state D.O.C. employees." *Id.* at 15-16.

On August 28, 2019, Plaintiff was given four coude catheters, but upon using one, he "noticed the tip of the catheter missing," and Plaintiff was bleeding and in severe pain. *Id.* at 17. While waiting to be seen by the doctor, "Dunaway came into the prison's ER-room and told the Plaintiff[,] 'I told you I'll get your ass . . . .'" *Id.* At the hospital, "the intake nurse and doctor both agreed that someone deliberately cut the catheter so that it would get stuck." *Id.*

### III. Discussion

Defendants Dunaway and Cruz both argue that Plaintiff failed to exhaust his administrative remedies prior to filing this case and that the claims against them should be dismissed because they were not timely served with process. Additionally, Defendant Cruz contends that Plaintiff fails to state

a retaliation or deliberate indifference claim against him. Each argument is addressed in turn.

### a. Exhaustion

Exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004); *see also Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't*, 476 F. App'x 364, 366 (11th Cir. 2012).[3] Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Pozo*,[4] 286 F.3d, at 1024 (emphasis in original).

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060-61 (11th Cir. 2022); *see generally* Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[4] *Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002).

*Woodford*, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.*

Because failure to exhaust administrative remedies is an affirmative defense, a defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). A court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. *See Turner*, 541 F.3d at 1081. In *Turner v. Burnside* we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id.* Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id.* at 1082-83; *see also id.* at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in *Turner*, the Court can consider facts

outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. *Bryant*, 530 F.3d at 1376; *see also Jenkins v. Sloan*, 826 F. App'x 833, 838-39 (11th Cir. 2020). A "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

State law "determines what steps are required to exhaust." *Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015); *see also Jones*, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. *See* Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. *See* Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. *See* Fla. Admin. Code R. 33-103.006. If the matter is not resolved through informal and formal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. *See* Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can

bypass the informal-grievance stage and start with a formal grievance at the institutional level. *See* Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." *See* Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. *See* Fla. Admin. Code R. 33-103.007(3)(a).

Under the first step of the *Turner* analysis, the Court must review the allegations in the Motions and Responses and accept as true Plaintiff's allegations. *See Whatley*, 802 F.3d at 1209. In doing so, the Court finds that dismissal is not appropriate at step one. Thus, the Court turns to the second step of *Turner*.

Defendants Cruz and Dunaway both argue that Plaintiff failed to exhaust his administrative remedies as to his Eighth Amendment claims against them. They acknowledge that Plaintiff filed formal grievance log #1811-230-016 regarding the deliberate indifference claims raised in his Complaint. But Defendants argue that because Plaintiff did not file an appeal to the Secretary from the "denial of Formal Grievance Log [#]1811-230-016," he did not exhaust his administrative remedies. Doc. 78 at 9; Doc. 79 at 9. To prove their point, Defendants attach a printout summary of the formal,

7

informal, and appeal grievances Plaintiff filed during the relevant timeframe. *See* Doc. 78-1 at 1; Doc. 79-1 at 1. Notably, formal grievance #1811-230-016 is not included on this list.

Defendants, however, do not dispute that Plaintiff submitted this formal grievance regarding the deliberate indifference claims raised in this case. Instead, Defendants simply assume, without providing any proof, that this formal grievance was denied. But, because they have failed to provide a copy of the response to that formal grievance, or any other proof that the formal grievance was denied, they have failed to meet their burden of showing that Plaintiff did not exhaust his administrative remedies. Indeed, if that formal grievance was approved, Plaintiff would not be required to file an appeal. Thus, Defendants' request to dismiss the claims against them for Plaintiff's failure to exhaust is due to be denied.

### b. Retaliation Claim – Defendant Cruz

Defendant Cruz argues that "there are no facts pleaded to support" a retaliation claim against him. Doc. 78 at 10. Plaintiff responds that Cruz violated the First Amendment when he "deliberately failed to provide the Plaintiff with catheters in retaliation for the Plaintiff submitting institutional grievances and filing lawsuits against [the FDOC]." Doc. 88 at 2 (citing Doc. 1 at 13-17, 21).

> To establish a retaliation claim, a prisoner must demonstrate "that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal quotation marks and citation omitted). [A plaintiff] can prevail on a retaliation claim if "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

*Williams v. Radford*, 64 F.4th 1185, 1192 (11th Cir. 2023).

In Plaintiff's "Claims for Legal Relief," he lists and discusses only an Eighth Amendment deliberate indifference claim against Cruz. *See* Doc. 1 at 21-22. He does not mention retaliation or the First Amendment. *See id.* In his factual allegations, he mentions a letter written by his lawyer to Defendants Hodgson, Figueroa, and Cruz "regarding their denial of coude catheters, [and] their retaliation against the Plaintiff and told them to stop . . . ." *Id.* at 15; *see also id.* at 16-17 (similar allegations involving a second letter). While Plaintiff includes allegations of other individuals retaliating against him, he does not provide any factual allegations that would state a plausible retaliation claim against Cruz. Nor did he indicate that he was raising a retaliation claim

against Cruz. Thus, Cruz's Motion is due to be granted to the extent it seeks dismissal of any retaliation claim against him.

### c. Deliberate Indifference Claim – Defendant Cruz

Defendant Cruz argues that Plaintiff fails to state a deliberate indifference claim against him. *See* Doc. 78 at 10-14. To prevail on a deliberate indifference claim, a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

> "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). To meet the first prong, the plaintiff must demonstrate an "objectively serious medical need"—i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," and, in either instance, "one that, if left unattended, poses a substantial risk of serious harm." *Id.* (alteration adopted) (quotations omitted). To satisfy the second, subjective prong, the plaintiff must prove that the prison officials "acted with deliberate indifference to [his serious medical] need." *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (quotation omitted). "To establish deliberate indifference," a plaintiff must demonstrate that the prison officials "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than

> gross negligence." *Id.* (quotation omitted). An inmate-plaintiff bears the burden to establish both prongs. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

*Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (footnote omitted); *see Ireland v. Prummell*, 53 F.4th 1274, 1287 & n.5 (11th Cir. 2022). Importantly, for allegedly inadequate medical treatment to rise to the level of a constitutional violation, the care must be "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 1271 (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)); *see also Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference . . . as can a doctor's decision to take an easier and less efficacious course of treatment" or a doctor's failure to respond to a known medical problem (citations omitted)).

Taking Plaintiff's allegations as true, he adequately states a deliberate indifference claim against Cruz. He contends that Cruz was aware of his need for catheters, yet Cruz repeatedly failed to provide or ensure Plaintiff was provided with the catheters. Due to the lack of catheters, Plaintiff alleges he suffered severe harm. At this stage of the litigation, the Court finds that

Plaintiff has alleged a plausible deliberate indifference claim against Cruz. Therefore, Defendant Cruz's Motion is due to be denied in this regard.

### d. Timely Service

Defendants Cruz and Dunaway argue that under Federal Rule of Civil Procedure 4(m), the Court must dismiss the action against them because they were not served with process within 90 days of the Complaint being filed. Doc. 78 at 14-15; Doc. 79 at 10.

As the docket clearly reflects, the Court entered multiple orders regarding service of process on Defendants Cruz and Dunaway, initially beginning twelve days after the Complaint was filed. *See* Orders (Docs. 6, 8, 11). When the Court's, the FDOC's, and the United States Marshal's efforts were unsuccessful, the Court ordered Plaintiff to provide additional information to perfect service on these Defendants. *See* Order (Doc. 27). When Plaintiff was unable to do so without discovery, the Court deferred dismissing the claims against Cruz and Dunaway so as to afford Plaintiff time to conduct discovery so he could provide identifying information for these Defendants. *See* Order (Doc. 31); *see also* Orders (Docs. 42, 56). When Plaintiff timely provided additional identifying information for Cruz and Dunaway, the Court again directed service of process, *see* Order (Doc. 60), which was successful, *see* Returns of Service (Docs. 64, 66).

Considering the record, the Court denies Defendants' request to dismiss the claims against them because they were not timely served under Rule 4(m).

Accordingly, it is

**ORDERED**:

1. Defendant Cruz's Motion to Dismiss (Doc. 78) is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** to the extent that any retaliation claim against Cruz is **DISMISSED without prejudice**. The Motion is otherwise **DENIED**.

2. Defendant Dunaway's Motion to Dismiss (Doc. 79) is **DENIED**.

3. Defendants Cruz and Dunaway shall answer the Complaint within **14 days** of the date of this Order.

4. Counsel for Defendants Cruz and Dunaway shall confer with Plaintiff regarding a proposed schedule for the completion of discovery, if any is necessary, and the filing of dispositive motions. Within **14 days** of the date of this Order, counsel shall file a notice advising the Court of the proposed schedule.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st day of May, 2024.

_____
BRIAN J. DAVIS
United States District Judge

JAX-3 5/28
c:
Jerome Burgess
Counsel of Record